UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,

                Plaintiff,

- against -

THE CITY OF NEW YORK and
THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK,

                Defendants.

09 Civ. 10432 (PGG)

**MEMORANDUM OPINION
& ORDER**

PAUL G. GARDEPHE, U.S.D.J.:

        This action presents an insurance coverage dispute.  Plaintiff Philadelphia Indemnity Insurance Company ("PIIC") issued a liability policy to Mosholu Montefiore Community Center ("Mosholu").  A student attending a New York City public school was injured at Mosholu while allegedly participating in a vocational training program.  The student later sued, inter alia, Defendants City of New York and the Department of Education ("DOE").  Defendants tendered their defense to PIIC, claiming that they were "additional insureds" under the policy PIIC issued to Mosholu.

        In its Complaint, PIIC seeks a declaratory judgment that "[Defendants] are not entitled to Insured status, and thus Philadelphia has no duty to defend or indemnify [Defendants]."  (Cmplt. ¶ 1)  PIIC also seeks reimbursement for its expenses in defending the City and DOE in the related personal injury action since the date it revoked coverage.  Defendants have filed a counterclaim seeking a declaration that PIIC has a duty to defend and indemnify Defendants in the personal injury action.

The parties have filed cross-motions for summary judgment. For the reasons stated below, Plaintiff's motion for summary judgment as to coverage will be granted. Defendants' motion for summary judgment will be denied, except as to Plaintiff's claim for reimbursement of its expenses in defending the City and DOE in the personal injury action. As to Plaintiff's reimbursement claim, Defendants' summary judgment motion will be granted.

## BACKGROUND

PIIC issued a commercial general liability insurance policy to Mosholu, located at 3450 DeKalb Avenue in the Bronx, for the period of May 1, 2008 to May 1, 2009. (Pltf. R. 56.1 Stmt. ¶ 1)[1] The named insureds on the policy are: Mosholu-Montefiore Community Center, Inc.; Child Development Center of Mosholu-Montefiore Community Center Inc.; and The Boys & Girls Club of Mosholu-Montefiore Community Center, Inc. (Pltf. R. 56.1 Stmt. ¶ 1; Biernoff Decl., Ex. 1 (Policy) at PHIL 00005, PHIL 00014) Endorsements to the policy list, among others, the following additional insureds:

> Administration for Children's Services
> Office of Day Care Contracts
> 150 Williams St Fl 9
> New York, NY 10038-2603
>
> New York City Dept of Youth & Community Development
> 156 William St
> New York, NY 10038-2609

---

[1] Unless otherwise noted, citations to the parties' Local Rule 56.1 statements concern factual assertions that are admitted or are deemed admitted because they were neither admitted nor denied by the opposing party or have not been contradicted by citations to admissible evidence. See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." (citations omitted)).

>The City of New York & The NYC Department of Youth and Community Development
>156 William St
>New York, NY 10038-2609

(Pltf R. 56.1 Stmt. 21; Biernoff Decl., Ex 1 (Policy) at PHIL 00011, PHIL 00013, PHIL 00193, 00196)  The New York City Department of Education is not listed either as a named insured or as an additional insured.  (Pltf. R. 56.1 Stmt. ¶ 17; Biernoff Decl., Ex. 1 (Policy))

In May 2008, Cecily Diaz – a special education student at Public School 754, located at 470 Jackson Avenue in the Bronx – was enrolled in a vocational training/internship program under the auspices of the City of New York and DOE.  (Pltf. R. 56.1 Stmt. ¶¶ 2, 3)  In connection with this program, Diaz was assigned to work at Mosholu.[2]  (Id. ¶ 4)  On May 30, 2008, while Diaz was working at Mosholu, hot water spilled on her face, chest, and body, causing serious injuries.  (Id. ¶ 5)

On July 24, 2008, Diaz filed a Notice of Claim with the New York City Office of Comptroller alleging that the City and DOE had failed to properly supervise her while she was participating in the vocational training program at Mosholu, and seeking compensation for her injuries.  (Id. ¶ 7; Def. R. 56.1 Resp. ¶ 6; Bradley Decl., Ex. 3 (Notice of Claim))  Diaz later brought suit against Defendants in Supreme Court of the State of New York, Bronx County.  (Biernoff Decl., Ex. 3 (Diaz Summons and Complaint))

On August 4, 2008, the City Comptroller sent a letter to Mosholu stating that it would withhold $1 million under its contract with Mosholu unless Mosholu's insurer, PIIC, provided "written assurance" that it would "defend and indemnify" the "City of New York" with respect to Diaz's claim.  (Pltf. R. 56.1 Stmt. ¶ 8; Bradley Decl., Ex. 4 (Aug. 4, 2008 City

---

[2]  Defendants do not dispute that Diaz's Complaint against Defendants makes this allegation, but note that "[t]here is no evidence in the record in this action either way regarding the truth or accuracy of [this allegation]." (Def. R. 56.1 Resp. ¶ 4)

Comptroller Ltr. to Mosholu))  Defendants sent a letter directly to PIIC on August 28, 2008, requesting that it defend Defendants in the Diaz lawsuit.  In its letter to PIIC, the City represented that "Citywide Central Insurance Program/Mosholu Montefiore Head Start Program" was the named insured, and that "The City of New York & The New York City Department of Education (DOE) [were] . . . additional named insured[s]."  (Id. ¶ 9; Biernoff Decl., Ex. 4 (Aug. 28, 2008 City Law Dept. Ltr. to PIIC))

PIIC initially responded to the City's demand in an August 8, 2008 email stating: "[w]e are currently investigating this matter, however it is clear that the claimant, Cecily Diaz was under the insured's supervision at the time of this loss.  Therefore we will agree[] to indemnify and defend the NYC Board of Education in the [Diaz] matter."  (Biernoff Decl., Ex. 5 at 2)  In a September 16, 2008 letter to the City, PIIC gave "formal notice of acceptance of the tender of defense and indemnification in the [Diaz] litigation."  (Id. Ex. 6 (Sept. 16, 2008 PIIC Ltr. to City Law Dept.); see also Pltf. R. 56.1 Stmt. ¶ 10)

In a May 7, 2009 letter to the City, however, PIIC revoked coverage:

> Based in part on our continuing investigation, as well as documents generated during the litigation, we must now inform you that the City and [DOE] are not additional insureds under [the policy]. . . .  As a consequence, PIIC now disclaims coverage to the City and [DOE] for the Diaz lawsuit.  PIIC will neither defend nor indemnify the City or [DOE] with respect to the injuries allegedly sustained by Cecily Diaz on May 30, 2008.

(Biernoff Decl., Ex. 7 (May 7, 2009 PIIC Ltr. to City Law Dept.); see also Pltf. R. 56.1 Stmt. ¶ 11)  PIIC's letter also states:  "[a]s a courtesy, we have forwarded your tender to [two insurers identified in the Notice of Claim and Certificate of Insurance the City had provided to PIIC] and requested that they defend and indemnify the City and [DOE] and make immediate arrangements to assign counsel to defend the City and [DOE]."  (Biernoff Decl., Ex. 7 (May 7, 2009 PIIC Ltr. to City Law Dept.); Pltf. R. 56.1 Stmt. ¶ 12)

4

In letters to Defendants dated June 4, 2009, and June 22, 2009, PIIC reiterates that the City Law Department tendered the City and DOE's defense to the wrong insurer, and requests that Defendants identify new counsel that will represent them in the Diaz litigation. (Id. Ex. 8 (June 22, 2009 Bradley Ltr. to City Law Dept.); Pltf. R. 56.1 Stmt. ¶¶ 13-14) According to the Complaint, Defendants did not respond to any of the letters, and PIIC has continued to provide a defense for the City and DOE in the Diaz litigation. (Cmplt. ¶¶ 17-18) The instant action was filed on December 23, 2009. (Dkt. No. 1)

## DISCUSSION

### I. LEGAL STANDARD

Summary judgment is warranted when the moving party shows that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008). "'[W]here the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim.'" Watson v. Consol. Edison Co. of N.Y., Inc., 374 F. App'x 159, 161 (2d Cir. 2010) (quoting Bay v. Times Mirror Magazines, Inc., 936 F.2d 112, 116 (2d Cir. 1991)).

In deciding a summary judgment motion, the Court "'resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001)). However, a "'party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for

summary judgment . . . .[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.'" Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (alterations in original) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

Under New York law,[3] "'[t]he proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment.'" RSL Commc'ns, PLC v. Bildirici, No. 04 Civ. 5217 (RJS), 2010 WL 846551, at *1 (S.D.N.Y. Mar. 5, 2010) (quoting Omni Quartz v. CVS Corp., 287 F.3d 61, 64 (2d Cir. 2002)); Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 465 (2d Cir. 2010) ("Under New York law . . . the initial question for the court on a motion for summary judgment with respect to a contract claim is 'whether the contract is unambiguous with respect to the question disputed by the parties.'" (quoting Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002))).

These standards apply to insurance policies just as to any other contract: "'The New York approach to the interpretation of contracts of insurance is to give effect to the intent of the parties as expressed in the clear language of the contract. . . . New York follows the well established contra proferentem principle which requires that equivocal contract provisions are generally to be construed against the drafter.'" United States v. Am. Home Assurance Co., No. 94 Civ. 7621(LMM), 2003 WL 21436219, at *2 (S.D.N.Y. June 19, 2003) (quoting McCarthy v.

---

[3] The parties have not cited to any choice of law provision in the insurance policy. Because they rely on New York law in their briefs, however, they have implicitly agreed that New York law governs, and this Court need not engage in a choice of law inquiry. See Ten Seventy One Home Corp. v. Liberty Mut. Fire Ins. Co., No. 07 Civ. 11211(DLC), 2008 WL 2464187, at *3 n.2 (S.D.N.Y. June 18, 2008) ("All parties have relied on New York law to defend their claims in this diversity action. The parties having consented to the application of forum law, that consent is sufficient to end the choice of law inquiry.") (citing 3Com Corp. v. Banco do Brasil, S.A., 171 F.3d 739, 743 (2d Cir. 1999)).

American Int'l Group, 283 F.2d 121, 124) (internal citations omitted).  However, "[t]he principle is well settled that the party claiming insurance coverage bears the burden of proving entitlement."  Mt. Hawley Ins. Co. v. United Staffing Sys. Inc., No. 113115/08, 2011 WL 873493 (Table), at *2 (N.Y. Sup. Ct. Feb. 25, 2011) (citing Tribeca Broadway Associates, LLC v. Mount Vernon Fire Insurance Company, 5 A.D.3d 198 (1st Dept. 2004)); see also Am. Home Assurance Co., 2003 WL 21436219, at *3 ("'[i]t is well established in New York that the insured bears the burden of proof on issues of coverage.'" (quoting C-Suzanne Beauty Salon, Ltd. v. General Ins. Co. of America, 574 F.2d 106, 114 (2d Cir. 1978))); Rubin v. Conn. Gen. Life Ins. Co., 56 A.D.2d 526, 526 (1st Dept. 1977) ("The plaintiff had the burden of proving that the decedent was covered under the subject policy."); Lapierre, Litchfield & Partners v. Cont'l Cas. Co., 59 Misc. 2d 20, 23 (N.Y. Sup. Ct. 1969) ("The plaintiff has the burden of proof to establish that the claim comes within the provisions of the agreement.  The clause at issue is not an exclusion clause on which the insurer has the burden of proof." (internal citations omitted)).

"'Where the terms of an insurance policy are clear and unambiguous, they should be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement.  However, where the policy is ambiguous and susceptible of two reasonable interpretations, extrinsic evidence may be admitted to resolve the ambiguity.'"  Am. Home Assurance Co., 2003 WL 21436219, at *3 (quoting Matter of Ideal Mut. Ins. Co., 231 A.D.2d 59, 63 (1st Dept. 1997)) (internal citations omitted).  "'[L]anguage found in insurance policies should be examined 'in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect those purposes.'"  Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 237 (2d Cir. 2002) (quoting Newmont Mines Ltd. v. Hanover Ins. Co., 784 F.2d 127, 135 (2d Cir.1986)).  "[T]he court should not find the contract

7

ambiguous where the interpretation urged by one party would 'strain [] the contract language beyond its reasonable and ordinary meaning.'" Maverick Tube Corp., 595 F.3d at 467 (quoting Bethlehem Steel Co. v. Turner Constr. Co., 2 N.Y.2d 456, 459 (1957)). "'[I]f the court finds that the contract is not ambiguous[,] it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence' and it may then award summary judgment." Int'l Multifoods Corp., 309 F.3d at 83 (quoting Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, England, 136 F.3d 82, 86 (2d Cir. 1998)).

## II.  ANALYSIS

### A.  Defendants Are Not "Additional Insureds" Under the Policy

The parties agree that Defendants are not named insureds under the policy. (Def. R. 56.1 Resp. ¶¶ 15, 16) Defendants argue, however, that they are covered under the policy as a result of endorsements listing the following "additional insureds":

> Administration for Children's Services
> Office of Day Care Contracts
> 150 Williams St Fl 9
> New York, NY 10038-2603
>
> New York City Dept of Youth & Community Development
> 156 William St
> New York, NY 10038-2609
>
> The City of New York & The NYC Department of Youth and Community Development
> 156 William St
> New York, NY 10038-2609

(Def. Br. 6; see also Biernoff Decl., Ex 1 (Policy) at PHIL 00011, PHIL 00013, PHIL 00193, PHIL 00196)

As an initial matter, there is no credible argument that the endorsements listed above provide coverage to the New York City Department of Education. DOE is not named as

8

an insured or as an additional insured, and the policy thus provides no coverage to it.  See, e.g., Tribeca Broadway Associates, 5 A.D.3d at 200 ("a party that is not named an insured or an additional insured on the face of the policy is not entitled to coverage") (citing Moleon v. Kreisler Borg Florman Gen. Constr. Co., 304 A.D.2d 337 (1st Dept. 2003)).  Similarly, the first two endorsements listed above make no reference to the City of New York, and accordingly they provide no source of coverage for the City.  Id.

Defendants argue, however, that the reference to "The City of New York" in the third endorsement set forth above – although linked to the "The NYC Department of Youth and Community Development" – was intended by the parties to provide coverage to the City of New York for purposes of the activities of all New York City agencies at Mosholu.  This Court finds that no reasonable jury could accept this argument and that the City of New York is not an "additional insured" under the policy.

The third endorsement must be read "in the context of the entire agreement." Maverick Tube Corp., 595 F.3d at 467 (citations omitted).  In that context, it is clear that this endorsement was intended to cover the City of New York in connection with the activities of the Department of Youth and Community Development at Mosholu.  If the parties intended the policy to provide coverage to <u>all</u> New York City agencies, there would be no need to name the Department of Youth and Community Development and the Administration for Children's Services, Office of Day Care Contracts ("ACS"), in the policy's endorsements.  "In interpreting a contract under New York law, . . . the contract 'should be construed so as to give full meaning and effect to all of its provisions.'" Ten Seventy One Home Corp. v. Liberty Mut. Fire Ins. Co., No. 07 Civ. 11211(DLC), 2008 WL 2464187, at *3 n.2 (S.D.N.Y. June 18, 2008) (quoting Shaw Group, Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 121 (2d Cir. 2003)).  Accepting Defendants'

9

interpretation would require this Court to find that the references to the Department of Youth and Community Development and to ACS are meaningless surplusage.

Furthermore, accepting Defendants' argument would require this Court to find that it was the parties' intention that <u>all</u> City agencies be covered by the endorsement listing "The City of New York & The NYC Department of Youth and Community Development," including all of the City's myriad departments, such as the New York City Police Department, the Fire Department, the Sanitation Department, the Department of Parks and Recreation, and so on. Such a reading would be absurd.  <u>See</u> <u>Greenwich Capital Fin. Prods., Inc. v. Negrin</u>, 74 A.D. 3d 413, 415 (1st Dept. 2010) ("[A] contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties." (internal citations omitted)).

The only reasonable interpretation of the third endorsement is that it extends coverage to the City in connection with the agency named in that endorsement – the Department of Youth and Community Development.  That endorsement does not provide coverage to the City of New York for the activities of the Department of Education at Mosholu.[4]

### B. Plaintiff Is Not Estopped From Denying Coverage

---

[4] Defendants argue that "'[t]he only proper defendant in a lawsuit against an agency of a municipality is the municipality itself, not the agency through which the municipality acted,'" because in New York "'agencies of a municipality are not suable entities.'"  (Def. Br. 7 (quoting <u>Omnipoint Commc'ns, Inc. v. Town of LaGrange</u>, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009))). Assuming <u>arguendo</u> that the City's argument is correct, that provides no basis for determining insurance coverage here.  Stated another way, this Court cannot determine the extent of insurance coverage on the basis of whether a City agency is a suable entity.  The relevant question here is whether the parties intended that the City of New York be an insured entity for purposes of claims regarding every City agency, or whether coverage was intended to extend only to City agencies named in the endorsements.  For the reasons stated above, this Court has determined that coverage was provided only as to the agencies identified in the endorsements.

Defendants argue that PIIC should be equitably estopped from revoking coverage because of its "prior unqualified commitment" – made in response to the City's false representations as to the content of the policy's endorsements concerning named and additional insureds (see Biernoff Decl., Ex. 4 (Aug. 28, 2008 City Law Dept. Ltr. to PIIC)) – that it would defend and indemnify Defendants in the Diaz litigation. (Def. Br. 11)

As a general matter, estoppel cannot "create coverage where none exists under a policy." Mount Vernon Fire Ins. Co. v. Riccobono, No. 98 Civ. 1213(CSH), 1999 WL 777863, at *3 (S.D.N.Y. Sept. 30, 1999) (citing Wausau Insurance Companies v. Feldman, 213 A.D.2d 179, 180 (1st Dept. 1995) (insurer's provision of a defense for nine years without realizing that liability arose before policy period began did not preclude insurer from denying coverage because "[e]stoppel may not be used to create coverage where no insurance policy existed"); American Ref-Fuel Co. v. Resource Recycling, Inc., 248 A.D.2d 420, 424 (2d Dept. 1998) (where it is clear that entity is not an additional insured on policy, insurer has no obligation to defend despite its issuance of certificate of insurance naming entity as additional insured; "the doctrine of estoppel may not be invoked to create coverage where none existed under the policy"); Nassau Ins. Co. v. Manzione, 112 A.D.2d 408, 409 (2d Dept. 1985) ("Where there is no coverage under an insurance policy because the policy was not in existence at the time of the accident, estoppel cannot be used to create coverage.")); see also Sena v. Nationwide Mut. Fire Ins. Co., 224 A.D.2d 513, 514 (2d Dept. 1996) ("the doctrines of waiver or estoppel may not be invoked to create coverage 'where none exists under the policy as written'" (quoting Neil Plumbing & Heating Constr. Corp. v. Providence Washington Ins. Co., 125 A.D.2d 295, 297 (2d Dept. 1986))). Under this line of cases, because the policy offers no coverage to DOE or to the

11

City of New York in connection with DOE activities at Mosholu, estoppel cannot create coverage for them.

There is another line of cases which is not entirely reconcilable with the authority cited above.  Under these cases, "[i]f an insurer assumes the defense of an action and controls its defense on behalf of an insured with knowledge of facts constituting a defense to the coverage of the policy without reserving its right to deny coverage, the insurer is estopped from denying coverage at a later time, even if mistaken on the requirement of coverage."  Utica Mut. Ins. Co. v. 215 West 91st Street Corp., 283 A.D.2d 421, 422-23 (2d Dept. 2001) (insurer estopped from denying coverage after providing defense for approximately four years and one year in related personal injury actions); see also Albert J. Schiff Associates, Inc. v. Flack, 51 N.Y.2d 692, 699 (1980) (commenting, in dicta, that "[d]istinguished from waiver, of course, is the intervention of principles of equitable estoppel, in an appropriate case, such as where an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense.  In such circumstances, though coverage as such does not exist, the insurer will not be heard to say so.").

"The recognition of such an estoppel[, however,] has as its basis the detrimental reliance suffered by the insured. . . . As such, an estoppel will lie only if the insured has demonstrated that it has been prejudiced by the insurance carrier's actions."  National Indemnity Co. v. Ryder Truck Rental, Inc., 230 A.D.2d 720, 721 (2d Dept. 1996) (citation omitted); see also American Transit Ins. Co. v. Mendon Leasing Co., 241 A.D.2d 436, 437 (1st Dept. 1997) (insurer estopped from denying coverage after providing defense and "actively engag[ing] in settlement negotiations" for four years); Indemnity Ins. Co. of North America v. Charter Oak Ins.

12

Co., 235 A.D.2d 521, 522 (2d Dept. 1997) (insurer estopped from denying coverage after providing defense for three years, including "represent[ing] North Shore in all pretrial matters and certif[ying] the matter as ready for trial"); Hartford Ins. Group v. Mello, 81 A.D.2d 577, 578 (2d Dept. 1981) (insurer estopped from denying coverage where it had provided a "complete defense" for two years and then sought to disclaim coverage on the eve of trial); Reeve v. General Accident Ins. Co. of New York, 239 A.D.2d 759, 761 (3d Dept. 1997) ("'[E]stoppel will only lie if the insured has demonstrated that [he/she] has been prejudiced by the insurance carrier's actions.'" (alterations in original) (quoting Ryder Truck Rental, Inc., 230 A.D.2d at 721)); Martini v. Lafayette Studios Corp., 177 Misc.2d 383, 389, 390 (N.Y. Sup. Ct. 1998) ("estoppel will only be applied where the insured demonstrates prejudice"; insurer estopped from denying coverage after providing defense for 15 months, where insurer prejudiced insured by "advising it that it was covered by the . . . policy and not retracting that commitment for over a year, which lulled [insured] into not being concerned about the need for any other coverage").[5]

Here, Defendants do not contend that they were negatively affected by the representation provided by PIIC's chosen counsel for the eight months that preceded PIIC's revocation of coverage, nor have they alleged any other form of prejudice. Defendants' argument that the mere "loss of control over one's own defense" is sufficient prejudice (Def. Reply Br. 7) has been explicitly rejected by the First Department:

> [The] Supreme Court[, New York County,] based its finding of estoppel on the erroneous premise that because [the insurer] controlled [the insured's] defense in

---

[5] Utica Mut. Ins. Co., 283 A.D.2d at 422-23 – which involved a four-year delay in disclaiming coverage – does not allude to detrimental reliance, but it relies on two cases that involve such reliance. See Brooklyn Hosp. Ctr. v. Centennial Ins. Co., 258 A.D.2d 491, 492 (2d Dept. 1999) (insurer estopped from denying coverage where it "completely assumed the defense of the medical malpractice action for more than 11 years, until the eve of trial"); Hartford Ins. Group v. Mello, 81 A.D.2d 577, 578 (2d Dept. 1981) (insurer estopped where it had provided a "complete defense" for two years and then sought to disclaim coverage on the eve of trial).

13

>the underlying action, prejudice is presumed. . . . Prejudice, however, is not uniformly presumed in such circumstances, and estoppel will lie only if the insured has demonstrated prejudice by the insurer's actions. Prejudice is established only where the insurer's control of the defense is such that the character and strategy of the lawsuit can no longer be altered.

Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co., 28 A.D.3d 32, 39 (1st Dept. 2006) (citing Ryder Truck Rental, 230 A.D.2d 720; General Acc. Ins. Co. of Am. v. Metropolitan Steel Indus., 9 A.D.3d 254 (1st Dept. 2004); United States Fid. & Guar. Co. v. New York, Susquehanna & W. Ry. Corp., 275 A.D.2d 977 (4th Dept. 2000)); see also Corcoran v. Abbott Sommers, Inc., 143 A.D.2d 874, 876 (2d Dept. 1988) ("[i]nasmuch as the insured failed to demonstrate actual prejudice by virtue of the insurer's conduct, the insurer should not, on this record, be estopped from disclaiming coverage as to the remaining causes of action").

In sum, Defendants never had coverage under the PIIC policy for DOE's activities at Mosholu, and "estoppel may not be invoked to create coverage where none existed," American Ref-Fuel Co., 248 A.D.2d at 424, particularly where the claimant has not alleged detrimental reliance. Accordingly, PIIC will not be estopped from disclaiming coverage of Defendants for purposes of the Diaz lawsuit.

### C. PIIC Has Not Demonstrated That It is Entitled to Recoup Its Expenses Since It Disclaimed Coverage

In its notice of motion (Dkt. No. 9), PIIC seeks – in addition to a declaration that neither the City nor DOE has insured status under the PIIC policy, and that PIIC is not obligated to defend or indemnify Defendants in connection with the Diaz lawsuit – the following relief:

>a hearing before a Magistrate to recoup the defense costs, fees, expenses and interest expended and incurred relating to providing the city and [DOE] a defense, which they were not entitled to, in the [Diaz] Action from May 7, 2009, the date of PIIC's re-tender[, to the present].

(Pltf. Notice of Motion (Dkt. No. 9)) PIIC contends that it is entitled to this relief because of the false representations in the City's August 28, 2008 tender letter (Biernoff Decl., Ex. 4 at 1-2) concerning the named and additional insureds in Mosholu's PIIC policy. (Pltf. Reply Br. 7)

Defendants argue that they are entitled to summary judgment on PIIC's reimbursement claim, because PIIC has provided no legal authority supporting it. (Def. Br. 14; Def. Reply Br. 8-9) Defendants also argue that PIIC should not be rewarded for its lack of diligence in ascertaining what entities were entitled to coverage under the policy: if PIIC is correct that the City and DOE "are not additional insureds under the Policy, such a fact would and should have been readily evident to [PIIC] . . . upon the simple act of reviewing its own Policy." (Def. Reply Br. 9)

Despite having filed two briefs in connection with its summary judgment motion, PIIC has not articulated a legal theory supporting the recoupment of such expenses, nor has it cited any case in which such relief has been granted. Accordingly, Defendants' motion for summary judgment as to PIIC's reimbursement claim will be granted.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment as to coverage is GRANTED. Plaintiff's request for a hearing concerning the recoupment of expenses from Defendants is DENIED. Defendants' motion for summary judgment is DENIED as to coverage but GRANTED as to Plaintiff's reimbursement claim. The Clerk of the Court is directed to terminate these motions (Dkt. Nos. 9, 15) and to close this case.

Dated: New York, New York
       March 24, 2011                    SO ORDERED.

                                         _____
                                         Paul G. Gardephe
                                         United States District Judge